IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INGA MATHIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1871 |
| | § | |
| FEDEX CORPORATE SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 27).  The court has considered the motion, the response, the reply, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I.  Case Background

Plaintiff filed this employment action against her former employer, asserting various claims under Title VII of the Civil Rights Act of 1964 ("Title VII")[2] and an unequal pay claim under the Equal Pay Act.[3]

### A.  Factual Background[4]

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 26.

[2]     42 U.S.C. §§ 2000e-2000e-17.

[3]     29 U.S.C. § 206(d).

[4]     The court's recitation of the facts is distilled from business records and the testimony of Plaintiff and other current and former employees of Defendant.  Thus, for the record, the court does not rely on Plaintiff's First

Plaintiff, an African-American woman, began her employment as an account executive with Defendant in 2005.[5]   Plaintiff's responsibilities included calling potential customers and servicing customers assigned to her in order to sell a variety of Defendant's transportation and delivery services.[6]   The decision to hire Plaintiff was made by Lisa Akers ("Akers"), a district sales manager ("DSM"), who served as Plaintiff's manager until May 2007, when Plaintiff began reporting to another DSM, Anthony Ross ("Ross").[7]   Both Akers and Ross reported to Patrick Galvin ("Galvin") from 2005 until December 2010, when Jerry Page ("Page") assumed Galvin's position.[8]   Kathie Walthall ("Walthall") and James Wallace ("Wallace") were the human resources strategic advisors assigned to the sales teams reporting to Akers and Ross.[9]

On January, 25, 2007, Akers and Plaintiff discussed what Akers

---

Amended Complaint.

Defendant filed a response and objections to Plaintiff's Statement of Disputed Facts.  Defendant's objections are duly noted.  The court is not relying on Plaintiff's Statement of Disputed Facts as competent summary judgment evidence.  Therefore, the court **OVERRULES** Defendant's objections.

[5]    See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 136-37; Doc. 27-7, Ex. 4 to Def.'s Mot. for Summ. J., Lisa Akers' ("Akers") Dep. p. 194; Doc. 27-4,  Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 57.

[6]    See Doc. 27-4,  Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 57-58; Doc. 27-11, Ex. 8 to Def.'s Mot. for Summ. J., Jerry Page's ("Page") Decl. ¶ 5.

[7]    See Doc. 27-7, Ex. 4 to Def.'s Mot. for Summ. J., Akers' Dep. p. 194; Doc. 27-10, Dep. Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 3.

[8]    See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 5.

[9]    See Doc. 27-12, Ex. 9 to Def.'s Mot. for Summ. J., Wallace's Dep. pp. 11-12; Doc. 27-5, Ex. 2 to Def.'s Mot. for Summ. J., Walthall's Dep. p. 27.; Dec. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 71-72.

had perceived to be a decline in Plaintiff's performance.[10]   On February 14, 2007, Plaintiff complained to Walthall that Akers had been treating Plaintiff unfairly by not giving her credit for accounts, imposing requirements on her that were not imposed on her colleagues, and speaking to her in an intimidating tone.[11]  Walthall and Galvin spoke with Plaintiff and Akers regarding Plaintiff's concerns.[12]  Galvin met with Plaintiff and Akers on April 17, 2007, to discuss how to improve their business relationship.[13]

On April 27, 2007, Plaintiff sent Galvin and Walthall an email stating that her relationship with Akers had not improved and that she "[felt] hindered in performing [her] duties due to a lack of support and the hostile and harassing environment."[14]  Galvin subsequently offered Plaintiff the opportunity to transfer to a different manager.[15]   Plaintiff accepted the offer and began reporting to Ross in May 2007.[16]

---

[10]   See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 211, Dep. Ex. 29.

[11]   See Doc. 27-5, Ex. 2 to Def.'s Mot. for Summ. J., Walthall's Dep. pp. 27, 47-49, Dep. Ex. 5.

[12]   See id. pp. 21-22; Doc. 27-8, Ex. 5 to Def.'s Mot. for Summ. J., Galvin's Dep. p. 60; Doc. 27-7, Ex. 4 to Def.'s Mot. for Summ. J., Akers' Dep. p. 220.

[13]   See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 247-48, Dep. Ex. 37.

[14]   See id. Dep. Ex. 39.

[15]   See Doc. 27-8, Ex. 5 to Def.'s Mot. for Summ. J., Galvin's Dep. pp. 55-56.

[16]   See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 241; Doc. 27-10, Dep. Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 3.

In October 2008, Plaintiff was promoted to Senior Account Executive in Field Sales and received a fifteen percent pay increase.[17]   In December 2010, Defendant integrated its Express Freight Multi-Weight sales team into the Field Sales Team.[18]   As part of the integration process, territories were realigned and accounts were redistributed.[19]   Some of Plaintiff's larger accounts were transferred to another account executive on Ross's team.[20] Ross began to notice problems with Plaintiff's behavior and attitude after the sales-team integration.[21]   In a performance review dated July 1, 2011, Ross indicated that Plaintiff had met or exceeded expectations as to most of her objectives but identified concerns with her adaptability, communication skills, planning, organization, and attention to detail.[22]   Plaintiff complained to Page and Wallace about Ross's review.[23]

In September 2011, Ross sent Plaintiff to Dallas to meet with Ty Carter ("Carter"), an inside sales manager, after Plaintiff

---

[17]   See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 54; Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶¶ 8, 12.

[18]   See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 14.

[19]   See id.

[20]   See id. ¶ 17.

[21]   See id. ¶ 19.

[22]   See Doc. 27-9, Ex. 6 to Def.'s Mot. for Summ. J., Denise Armstrong's ("Armstrong") Decl. ¶ 5, Dep. Ex. B.

[23]   See Doc. 27-12, Ex. 9 to Def.'s Mot. for Summ. J., Wallace's Dep. p. 15; Doc. 27-11, Ex. 8 to Def.'s Mot. for Summ. J., Page's Decl. ¶ 10.

expressed an interest in transferring to inside sales.[24]  While in Dallas, Plaintiff got into an altercation with an inside sales representative and was arrested for assault and battery.[25] Plaintiff pled "no contest" to the charge.[26]  Ross learned of the incident from Carter and, after consulting Wallace, suspended Plaintiff on September 13, 2011, for failure to comply with Defendant's Acceptable Conduct Policy by failing to notify Ross about the charge.[27]

An investigation into the incident revealed that Plaintiff had not reported two previous arrests for driving under the influence.[28] Ross, in consultation with Wallace, decided to terminate Plaintiff's employment.[29]  On September 30, 2011, Plaintiff met with Ross and, feeling that she "had had enough" and that Ross was "berating [her] and being belligerent," resigned without having been told of the decision to terminate her employment.[30]

---

[24]     See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 101-02; Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 20.

[25]     See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 98, 102-05.

[26]     See id. p. 115.

[27]     See Doc. 27-6, Ex. 3 to Def.'s Mot. for Summ. J., Wallace's Decl. ¶¶ 6-7, 9, Dep. Ex. A; Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 21.

[28]     See Doc. 27-6, Ex. 3 to Def.'s Mot. for Summ. J., Wallace's Decl. ¶¶ 7-8; Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 88-98.

[29]     See Doc. 27-6, Ex. 3 to Def.'s Mot. for Summ. J., Wallace's Decl. ¶ 10; Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 25.

[30]     See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross's Decl. ¶ 26; Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 112.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 5, 2012, alleging discrimination, harassment, and retaliation.[31] On March 22, 2012, the EEOC issued Plaintiff a Dismissal and Notice of Rights, dismissing the EEOC charge and notifying Plaintiff that she had ninety days within which to file a lawsuit.[32]

## B.   **Procedural Background**

On June 22, 2012, Plaintiff filed this suit.[33] In her original complaint, Plaintiff alleged that she was subjected, while employed, to unequal pay based on her gender, discrimination and a hostile work environment based on her race and gender, and retaliation and was wrongfully terminated based on her gender.[34] Plaintiff sought injunctive relief, compensatory damages, punitive damages, court costs, and attorneys' fees.[35]

After Defendant answered, Plaintiff amended her complaint, with leave of court, to name her employer's corporate parent as the defendant and to add a few facts.[36]   Defendant then answered

---

[31]   See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. Dep. Ex. 50.

[32]   See Doc. 1, Ex. 1 to Pl.'s Compl., Dismissal & Notice of Rights.

[33]   See Doc. 1, Pl.'s Compl.

[34]   See id. pp. 1, 3-6.

[35]   See id. pp. 7-8.

[36]   See Doc. 6, Def.'s Ans.; Doc. 11, Pl.'s Mot. for Leave to File Am. Compl.; Doc. 14, Min. Entry Order Dated Sept. 28, 2012; Doc. 16, Pl.'s Am. Compl.

Plaintiff's amended complaint.[37]  On April 26, 2013, the parties participated in a mediation and, thereafter, continued settlement discussions.[38]  Despite their efforts, the parties were unable to settle the case.[39]

On May 20, 2013, the court referred the case to the undersigned.[40] Eight days later, Defendant filed the pending motion for summary judgment.[41] On June 13, 2013, Plaintiff moved to reopen discovery in order to depose Ross and requested additional time to respond to Defendant's motion in order to incorporate Ross's testimony.[42]  At a hearing on the issue in late June, the court granted Plaintiff's motion.[43]  Plaintiff filed a response to Defendant's summary judgment motion on September 3, 2013, and Defendant filed a reply two weeks later.[44]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that

---

[37]    See Doc. 17, Def.'s Ans. to Pl.'s Am. Compl.

[38]    See Doc. 42, Jt. Mot. to Reset Docket Call & Extend Date to File Pretrial Mots., Mots. in Limine, & Jt. Pretrial Order p. 2.

[39]    See id.

[40]    See Doc. 26, Order Dated May 20, 2013.

[41]    See Doc. 27, Def.'s Mot. for Summ. J.

[42]    See Doc. 33, Pl.'s Mot. to Reopen Disc. & Mot. for an Extension of Time to Respond to Def.'s Mot. for Summ. J.

[43]    See Doc. 38, Oral Order Dated June 26, 2013.

[44]    See Doc. 39, Pl.'s Resp. to Def.'s Mot. for Summ. J.; Doc. 41, Def.'s Reply.

no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at

trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. City of Henderson, Tex., 286 F.3d 264, 269 (5th Cir. 2002).

In the absence of summary judgment evidence that an actual controversy exists, the court cannot assume that the nonmoving party can or will prove the necessary facts at trial.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

"[U]nsubstantiated assertions are not competent summary judgment evidence." <u>Ragas v. Tenn. Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998)(citing <u>Celotex</u>, 477 U.S. at 324).  Furthermore, it is not incumbent on the court to search the record for triable issues.  <u>Id.</u>  The duty to identify evidence and its connection to the issues raised falls squarely on the party opposing summary judgment.  <u>Id.</u>  Under the Federal Rules, the court need only consider cited materials in deciding whether a party's evidence satisfies that party's summary judgment burden.  Fed. R. Civ. Proc. 56(c)(3).

### III. Analysis

Defendant moves for summary judgment on all of Plaintiff's Title VII and Equal Pay Act claims.  Specifically, Defendant contends that the statute of limitations bars many of Plaintiff's claims, that Plaintiff failed to exhaust administrative remedies on a Title VII discrimination claim based on unequal pay, and that Plaintiff fails to present evidence of a dispute of material fact as to one or more elements of her Title VII and Equal Pay Act claims.

At the outset, the court addresses the limitations and exhaustion requirements for Plaintiff's claims in order to narrow the allegations to those properly before this court.  Then, the court addresses Defendant's other arguments for summary judgment on

Plaintiff's Title VII and Equal Pay Act claims.

**A.   Limitations**

In Texas, a state that has an agency with authority similar to that of the EEOC, a complainant must file a charge of discrimination within 300 days of learning of the alleged discriminatory practice.  Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998); see also 42 U.S.C. § 2000e-5(e)(1); Webb v. Cardiothoracic Surgery Assocs. of N. Tex., 139 F.3d 532, 537 (5th Cir. 1998), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  Courts allow an equitable exception to the Title VII limitations rule for a continuing violation.  See Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003); Webb, 139 F.3d at 537.

The continuing violation doctrine provides that "a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts." Frank, 347 F.3d at 136. The U.S. Supreme Court has limited the doctrine in three ways: (1) the plaintiff must show that the alleged separate acts are related; (2) the violation must be continuing, that is, without any intervening action that divides the discrete acts; and (3) the court must act equitably in balancing Title VII's remedial powers with the purpose of the filing requirement.  Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009)(citing Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 118, 120 (2002)).

Several factors are pertinent to whether alleged discriminatory acts constitute a continuing violation. Waltman v. Int'l Paper Co., 875 F.2d 468, 475 (5th Cir. 1989); Berry v. Bd. of Supervisors of La. State Univ., 715 F.2d 971, 981 (5th Cir. 1983). The acts constitute a continuing violation when they involve the same type of discrimination, recur frequently, and trigger the employee's awareness of a duty to assert her rights or cause her adverse consequences regardless of discriminatory intent. Waltman, 875 F.2d at 475; Berry, 715 F.2d at 981.

Defendant argues that the only timely claims of discrimination or retaliation are those that occurred on or after March 11, 2011, which was 300 days before Plaintiff filed an EEOC charge of discrimination. Plaintiff contends that all of the claims pre-March 11, 2011, are timely under the doctrine of continuing violation.

The alleged adverse actions that Plaintiff identifies as the basis of her claims for discrimination and retaliation are Plaintiff's transfer from Akers' team to Ross's in May 2007, Ross's transfer of accounts from Plaintiff to a male co-worker starting in late 2010 or early 2011, and Plaintiff's resignation in lieu of termination on September 30, 2011.[45] These allegations represent discrete acts, not a series of related incidents. Therefore, the

---

[45]   See Doc. 39, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 8-10.

court finds that the continuing violation doctrine does not apply to these claims.  Accordingly, Plaintiff cannot maintain Title VII discrimination or retaliation claims based on incidents that occurred before March 11, 2011.

Plaintiff alleges that when she transferred from Akers' team to Ross's in May 2007, she "went from being discriminated as an African-American to being discriminated because of her sex."[46] Because the events underlying Plaintiff's claims of discrimination on the basis of race all took place before March 11, 2011, Plaintiff may only maintain a gender-based discrimination claim.

Unlike allegations of discrete acts of discrimination, allegations of hostile work environment, by their very nature, involve separate acts that collectively constitute one unlawful employment practice.  Stewart, 586 F.3d at 328 (citing Nat'l R.R. Passenger Corp., 536 U.S. at 115).  Therefore, a plaintiff alleging a hostile work environment is not limited to suing only on the acts that occurred within the three-hundred-day limitations period as long as at least one contributing act occurred within the statutory window.  Id. (citing Nat'l R.R. Passenger Corp., 536 U.S. at 105, 115).

Because no act related to her claim of racial harassment occurred within the statutory window, that claim is barred in its entirety.  On the other hand, her claim of gender harassment is

---

[46]     See Doc. 39, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 4.

based on acts occurring before and within the limitations period. The court can, therefore, consider all the alleged acts related to this claim.

**B.  Exhaustion**

In order to maintain a Title VII action, a plaintiff must exhaust administrative remedies with the EEOC.  See 42 U.S.C. §§ 2000e-5(e), (f); Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002).  Among other things, exhaustion requires that the scope of the EEOC charge covered all of the plaintiff's allegations of discrimination.  See Thomas v. Tex. Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000).  To be sure, the EEOC charge is construed liberally; however, the scope of the court's review "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Thomas, 220 F.3d at 395.

Defendant contends that a Title VII claim of discrimination by unequal pay is outside the scope of a reasonable investigation of the claims Plaintiff included in her EEOC charge of discrimination. In her response, Plaintiff argues that an EEOC charge is not a necessary prerequisite to an Equal Pay Act claim.  Indeed, Plaintiff's EEOC charge did not mention unequal pay, and an investigation into her allegations would not have been expected to cover unequal pay.  Moreover, Plaintiff's response indicates that she did not intend to plead an unequal pay claim under Title VII.

14

Plaintiff's Equal Pay Act claim, which is not subject to Title VII exhaustion requirements, is addressed in a subsequent section of this memorandum.

## C.  Title VII Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a).  Under Title VII, Plaintiff brought claims of discrimination, retaliation, and hostile work environment.

### 1.  Discrimination

In the absence of direct evidence of discrimination, as in this case, courts utilize the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  Vaughn v. Woodforest Bank, 665 F.3d 632, 636 (5th Cir. 2011)(citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)).

A prima facie case of discrimination requires the plaintiff to show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone who is not a member of the

protected class to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different protected category.  See Haire v. Bd. of Supervisors of La. State Univ., 719 F.3d 356, 363 (5th Cir. 2013).

Regarding the third element, only ultimate employment decisions are actionable as adverse employment actions in discrimination cases.  See McCoy v. City of Shreveport, 492 F.3d 551, 560 (5th Cir. 2007).  Ultimate employment decisions include "hiring, granting leave, discharging, promoting, or compensating." Id. at 559.  The fourth element may be satisfied by proof of disparate treatment in a situation where the plaintiff was replaced by someone within her protected class.  See Bryant v. Compass Grp. USA Inc., 413 F.3d 471, 478 (5th Cir. 2005).  In order to satisfy the fourth element, the situations of a plaintiff and her comparator "must be more than similar, they must be 'nearly identical.'" Collins-Pearcy v. Mediterranean Shipping Co., 698 F. Supp.2d 730, 760 (S.D. Tex. 2010) (quoting Perez v. Tex. Dep't of Crim. Justice, 395 F.3d 206, 213 (5th Cir. 2004)).  Thus, "employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009).

If a plaintiff establishes a prima facie case, an inference of intentional discrimination is raised, and the burden shifts to the

defendant to proffer legitimate, nondiscriminatory reasons for its actions.  See Vaughn, 665 F.3d at 636.  If the defendant satisfies this burden, then the inference of discrimination dissolves.  Id.

The plaintiff must then offer evidence that demonstrates either that the defendant's reason was a pretext for discrimination or that discrimination was a motivating factor.  Id.  The ultimate burden of persuasion remains with the plaintiff.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Defendant does not challenge Plaintiff's ability to meet the first two elements of her prima facie case.  Plaintiff identifies two alleged adverse employment actions: Ross's transferring some of her accounts to a male co-worker and Plaintiff's resignation in lieu of termination.[47]  Defendant concedes that Plaintiff's resignation in lieu of termination constitutes an adverse employment action,[48] but argues that Plaintiff may not complain about the transfer of accounts.

The record does not make clear whether the transfer of Plaintiff's accounts occurred within the 300-day period prior to Plaintiff filing a charge with the EEOC.  Regardless, this incident does not represent an ultimate employment decision.  Plaintiff argues that the transfer of accounts resulted in a loss of pay to

---

[47]    See Doc. 39, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 8, 20-22

[48]    When a plaintiff resigns before termination, she can only satisfy the third element by proving she was constructively discharged.  Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001). Because Defendant concedes this point, the court need not embark on a constructive discharge analysis.

her but fails to support this claim with any citation to the record.[49]  In fact, when asked during her deposition whether she had "received a decrease in pay during the time that [she] was employed by [Defendant]," Plaintiff responded that she had not.[50]  In the absence of any evidence that Plaintiff's compensation was affected by the transfer of accounts, this incident cannot be considered an ultimate employment decision.  Thus, the only adverse employment action applicable to Plaintiff's claims is her resignation in lieu of termination.

Defendant contends that Plaintiff cannot establish the fourth element of her prima facie case, as she cannot prove that she was treated differently than similarly situated employees or replaced by someone outside of her protected class.  A woman assumed responsibility for Plaintiff's territory after her resignation.[51]  Thus, she was not replaced by someone outside of her protected class.

Plaintiff likewise cannot identify any similarly situated employee who was treated differently than she was with respect to her resignation in lieu of termination.  Although Plaintiff resigned, Defendant intended to terminate her for failure to report arrests in violation of a company policy.  Plaintiff has not

---

[49]    See Doc. 39, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 20-22.

[50]    See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 186.

[51]    See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Ross'ss Decl. ¶ 27.

identified an instance when Defendant allowed a male employee to remain employed despite having failed to report an arrest.   In fact, the evidence reveals that Defendant terminated the employment of a male employee for the same reason as that for which it was planning to terminate Plaintiff within a week of her resignation.[52]

Therefore, the court finds that Plaintiff has failed to make out a prima facie case of gender discrimination.   Accordingly, Defendant is entitled to summary judgment on this claim.

## 2.   **Retaliation**

Title VII's anti-retaliation clause forbids an employer from acting in a way that discriminates against an employee because she has participated in a Title VII proceeding or has opposed an impermissible practice under Title VII. 42 U.S.C. § 2000e-3(a); Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 274 (2009).

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.   Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013). A plaintiff has engaged in a protected activity if she "made a charge, testified, assisted, or participated in any manner in an

---

[52]   See Doc. 27-6, Ex. 3. to Def.'s Mot. for Summ. J., Wallace's Decl. ¶ 12, Dep. Ex. B.

investigation, proceeding, or hearing under Title VII" or "opposed any practice made an unlawful employment practice by Title VII." Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3)(internal quotation marks omitted).

Defendant argues that Plaintiff did not engage in protected activity while employed because she never complained that the actions taken against her were based on her protected characteristics. Defendant further argues that only her resignation in lieu of termination qualifies as an adverse employment action in support of her retaliation claim. Defendant contends that, even if Plaintiff were to show that she engaged in protected activity, she could not identify evidence of a causal connection between any protected activity and any adverse action.

Plaintiff responds that she engaged in protected activity by complaining to Page and Wallace about Ross's 2011 performance review. Although, in her response to Defendant's motion, Plaintiff characterizes this incident as "report[ing] Ross's discriminatory actions," she points to no evidence indicating that she complained of discrimination. On the contrary, Plaintiff stated in her deposition that she never complained to anyone in human resources that she believed she was being treated differently because of her gender.[53]   Wallace and Page testified that Plaintiff did not

---

[53]     See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 217.

complain that the score or comments provided on her review were discriminatory.[54]  Wallace further stated that he was not aware of any complaint made by Plaintiff during her employment with Defendant relating to discrimination or harassment.[55]

Therefore, the court finds that Plaintiff has failed to establish a prima facie case of retaliation.  See <u>Harris-Childs v. Medco Health Solutions, Inc.</u>, 169 F. App'x 913, 916 (5th Cir. 2006) (unpublished)(affirming district court's finding that plaintiff failed to demonstrate that she engaged in a protected activity under Title VII because the plaintiff did "not allege that she specifically complained of racial or sexual harassment, only harassment.").  Accordingly, Defendant is entitled to summary judgment as to this claim.

### 3.  <u>Hostile work environment</u>

In order to maintain a Title VII claim of hostile work environment based on race or gender, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race or gender; (4) the harassment affected a term, condition, or privilege of employment; and, in cases of harassment alleged against coworkers, (5) the employer knew or should have known of

---

[54]   <u>See</u> Doc. 27-6, Ex. 3 to Def.'s Mot. for Summ. J., Wallace's Decl. ¶ 3; Doc. 27-11, Ex. 8 to Def.'s Mot. for Summ. J., Page's Decl. ¶ 10.

[55]   <u>See</u> Doc. 27-6, Ex. 3 to Def.'s Mot. for Summ. J., Wallace's Decl. ¶ 5.

the harassment and failed to take prompt remedial action. Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)(quoting Ramsey, 286 F.3d at 268); Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 325 (5th Cir. 2004).

Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, rather than merely offensive, and the degree to which the conduct unreasonably interferes with an employee's work performance or undermines the plaintiff's workplace competence. Lauderdale v. Tex. Dep't of Crim. Justice, 512 F.3d 157, 163 (5th Cir. 2007)(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993), abrogated on other grounds by Burlington Indus. v. Ellerth, 524 U.S. 742 (1998), and Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 270 (5th Cir. 1998)). The harassment must be severe or pervasive enough "to alter the conditions of employment and create an abusive working environment." Stewart, 586 F.3d at 330 (quoting Nat'l R.R. Passenger Corp., 536 U.S. at 116).

Discourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to "discriminatory changes in the terms and conditions of employment." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788

(1998))(internal quotations omitted).  The conduct about which the plaintiff complains must be both objectively and subjectively offensive.  <u>Stewart</u>, 586 F.3d at 330.  A hostile work environment is one in which the abuse is continuous, not simply episodic.  <u>See Faragher</u>, 524 U.S. at 787 n.1.

Plaintiff has identified the following acts of alleged harassment committed by Ross: (1) critiquing Plaintiff's "word choice and language;" (2) "constantly [finding] fault with [Plaintiff];" (3) "push[ing] the envelope to penalize [Plaintiff];" (4) "berat[ing] [Plaintiff] when others were not around;" (5) failing to assist Plaintiff in procuring technology for customers; (6) not allowing females to serve as the acting manager when Ross was out; (7) giving male account executives priority in distributing awards and tickets to entertainment events for their customers; and (8) transferring Plaintiff's accounts to a male account executive.[56]

As to the first five of these allegations, plaintiff has failed to allege that any harassment was based on her gender.  <u>See Hockman</u>, 407 F.3d at 325 (stating that to make out a hostile work environment claim, the plaintiff must show that "the harassment complained of was based on sex").

As to Plaintiff's remaining allegations, Plaintiff has introduced no evidence that Ross's actions were based on gender

---

[56]   <u>See</u> Doc. 39, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 4-5; Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 155.

other than her own perception that male account executives were treated differently.  When questioned about comments made regarding her race or gender, Plaintiff testified that "no direct comments were made to [her]" and that she had no "direct knowledge of a derogatory comment being made."[57]  Defendant has introduced evidence demonstrating that accounts were transferred based on the accounts' current or potential revenue and the size of the accounts.[58]  Some of Plaintiff's larger accounts were transferred to one of the two account executives on Ross's team who were responsible for larger accounts.[59]  Ross also transferred multiple accounts from male account executives.[60]

Plaintiff conceded in her deposition that females in fact served as acting manager of the team in Ross's absence on multiple occasions.[61]  The evidence indicates that tickets to entertainment

---

[57]    Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 144.  A co-worker of Plaintiff testified that, on one occasion when she asked Ross about his wife, he said, "Just like all women, she's trifling."  Doc. 40-15, Ex. 10b to Pl.'s Resp. to Def.'s Mot. for Summ. J., Cynthia Jones-Harris' Dep. p. 65.  The co-worker was offended by the remark.  Id.  However, Plaintiff does not assert that she was aware of the comment.  The comment alone is neither severe enough nor pervasive enough to alter the conditions of employment.  See Hernandez, 670 F.3d at 651.  More importantly, Plaintiff cannot claim that this comment, which was made to a co-worker and of which Plaintiff had no direct knowledge, affected a term, condition, or privilege of Plaintiff's employment.  See id.

[58]    See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Decl. of Ross ¶¶ 14-18; Doc. 27-11, Ex. 8 to Def.'s Mot. for Summ. J., Decl. of Page ¶¶ 7-9.

[59]    See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Decl. of Ross ¶¶ 38-40.

[60]    See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Decl. of Ross ¶ 17.

[61]    See Doc. 27-4, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 257.

events were distributed according to customer priority.[62]  Plaintiff has introduced no evidence other than her own speculation that she did not receive tickets on the same basis as male employees.

Thus, Plaintiff has introduced insufficient evidence that Ross's actions were connected to Plaintiff's gender or altered a term or condition of her employment and created an abusive working environment.  Plaintiff's allegations, therefore, cannot provide a basis for a hostile work environment claim.  Cf. Brown, 337 F.3d at 541 (stating that the nonmovant's burden to show that a genuine issue exists is not satisfied by conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence).

**B.   Equal Pay Act Claims**

The Equal Pay Act prohibits an employer from discriminating on the basis of sex when paying wages "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  Equal Pay Act claims are also analyzed using the burden-shifting framework set forth in McDonnell Douglas Corp., 411 U.S. at 792.  Browning v. Sw. Research Inst., 288 F. App'x 170, 173, 174 (5th Cir. 2008)(unpublished).  In order to establish a prima facie case under the Equal Pay Act, a

---

[62]     See Doc. 27-10, Ex. 7 to Def.'s Mot. for Summ. J., Decl. of Ross ¶ 35.

plaintiff must show that: (1) her employer is subject to the Equal Pay Act; (2) she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) she was paid less than a comparable employee of the opposite sex. Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993)(citing Jones v. Flagship Int'l, 793 F.2d 714, 722-23 (5th Cir. 1986)).

Plaintiff does not cite any evidence in support of the claim made in her complaint that she was paid a lower salary than her male counterparts and does not address the merits of her Equal Pay Act claim in her response to Defendant's motion. Because Plaintiff has not established that she was paid less than a comparable male employee, the court finds that Plaintiff has failed to establish a prima facie case under the Equal Pay Act. See id.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

26

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>11th</u> day of March, 2014.

Nancy K. Johnson
United States Magistrate Judge